UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| MAYCON LUCAS MARTINS-JANUARIO,<br><br>    Petitioner,<br><br>v.<br><br>PATRICIA HYDE et al.,<br><br>    Respondents. | )<br>)<br>)<br>)<br>)<br>)   Civil No. 25-13647-LTS<br>)<br>)<br>)<br>)<br>) |

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS

January 28, 2026

SOROKIN, J.

Maycon Lucas Martins-Januario, a citizen of Brazil presently in immigration detention, seeks a writ of habeas corpus under 28 U.S.C. § 2241. His petition is DENIED.

Promptly after Martins-Januario entered the United States in November 2024, he was detained by border patrol ("CBP"). Doc. No. 1 ¶ 16. Because he had entered without inspection and lacked valid entry documents, CBP initiated expedited-removal procedures pursuant to 8 U.S.C. § 1225(b)(1). See Doc. No. 6-2. Martins-Januario claimed a fear of returning to Brazil, so CBP referred him to U.S. Citizenship and Immigration Services ("USCIS") for a credible-fear interview. Doc. No. 1 ¶ 16. USCIS concluded he had not established a fear of persecution or torture in Brazil, a finding an immigration judge ("IJ") reviewed and affirmed. See Doc. No. 6-3. Weeks later, still in detention, Martins-Januario sought to revisit the credible-fear process, requesting a new interview. He claimed he spoke a rare language, possibly impeding his ability to communicate through the interpreter during his original interview. Doc. No. 6-1 ¶¶ 14–15.

After first refusing his request, USCIS issued a discretionary Notice to Appear on December 20, 2025, instituting full removal proceedings. Id.; Doc. No. 6-4.[1]

Pending such proceedings, ICE released Martins-Januario on parole pursuant to 8 U.S.C. § 1182(d)(5)(A) for a period of one year, subject to his participation in and compliance with an "Alternatives to Detention" ("ATD") supervision program. Doc. No. 6-5. Various conditions governed Martins-Januario's release. The parole notice, which Martins-Januario signed, warned that ICE could terminate his parole "at any time and for any reason," and specified that his release was "conditioned on [his] complying with [various] terms and conditions." Doc. No. 6-5 at 1. Those "terms and conditions" included requirements that Martins-Januario "notify ICE and the immigration judge of any address correction or address change," report to ICE as directed, and "comply with any other specified conditions." Id. The term requiring notice of address changes was reiterated on a second page, which Martins-Januario also signed. Id. at 2. A separate notice, also signed by Martins-Januario, documented his enrollment in the ATD program and specified additional requirements. Id. at 3. That notice made his release "contingent upon" his "successful participation" in the ATD program, which included location monitoring and a curfew. Id.

The respondents have produced records showing that Martins-Januario did not comply with the terms of his supervision. In February, May, August, and September of 2025, ICE documented violations of the terms governing his parole. See Doc. No. 13-1 at 8–15 (logging

---

[1] The Notice to Appear indicates that the expedited-removal order previously issued for Martins-Januario was being vacated pursuant to a regulation that affords USCIS the discretion to refer a noncitizen for full removal proceedings even absent a positive credible-fear finding. See Doc. No. 6-4; 8 C.F.R. § 208.30(b). In this way, the Notice confirms that immigration authorities viewed Martins-Januario as within the reach of § 1225, and not § 1226, when he was apprehended and later released.

four failures to check in as directed from authorized locations and one failure to report address change). In mid-October 2025, ICE again documented violations for failure to check in and failure to report an address change. Id. at 16. Shortly after the October violations, Martins-Januario was arrested pursuant to a warrant when he arrived at an ICE office in New Hampshire where he had been directed to report. Doc. No. 1 ¶ 17; Doc. No. 6-6. The form warrant is the only document before the Court that references § 1226.

Martins-Januario was detained following his arrest, and he remains detained today. His removal proceedings continued and, on December 4, 2025, an IJ ordered him removed to Brazil. Doc. No. 6-7. The order cited Martins-Januario's "admissions and concessions," and the fact that he had "made no application(s) for relief from removal" before the immigration court. Id. at 1. A few days after the removal order issued, and weeks before the one-year parole term expired, ICE issued a letter formally revoking Martins-Januario's humanitarian parole. Doc. No. 13-1 at 6.

The habeas petition now before the Court was filed on December 3, 2025, the day before the IJ's removal order. Doc. No. 1. The petition raises statutory and constitutional challenges to Martins-Januario's detention and seeks either his release or a bond hearing. Id. The respondents opposed the petition, referencing in their papers ATD violations by Martins-Januario and arguing his detention was authorized by § 1225(b)(1). Doc. No. 6. After reviewing the opposition memorandum, the Court invited a reply, which Martins-Januario filed on January 7, 2026. Doc. No. 10. The reply noted Martins-Januario had recently appealed the IJ's removal order to the Board of Immigration Appeals. Id.; see Doc. No. 10-1 (reflecting appeal docketed on January 5 deadline). Because the reply questioned the existence of ATD violations, the Court directed the respondents to supplement the record with documents describing the violations. Doc. No. 11.

The respondents provided such records, followed by a declaration summarizing their contents. Doc. Nos. 12, 13.

Having carefully reviewed all of the parties' submissions, the Court concludes that Martins-Januario's challenges to his detention fail at this time.[2] The record establishes a course of events that render his detention lawful, at least for now, pursuant to 8 U.S.C. § 1225(b)(1). The respondents invoked the expedited-removal process from the start. They complied with the statutory requirements governing that process, including the unambiguous time limitation applicable when a noncitizen seeks IJ review of a negative credible-fear determination by USCIS. See § 1225(b)(1)(B)(iii)(III) (requiring such review within seven days of initial finding); Doc. No. 6-1 ¶¶ 10–13 (describing November 12 interview, November 18 determination by USCIS, and November 21 review and affirmance by IJ); Doc. No. 6-3 (confirming November 21 IJ decision).[3] That process yielded a finding that Martins-Januario did not have a credible fear of returning to Brazil. Thus, § 1225(b)(1)(B)(iii)(IV) provides for his mandatory detention "until removed."

That the respondents then exercised their discretion to institute full removal proceedings anyway, in response to his continued assertion of fear and allegations concerning his language needs, does not alone change the statutory basis for the respondents' detention authority. Cf. § 1225(b)(1)(B)(ii) (providing for continued detention of noncitizen for full consideration of asylum application following positive credible-fear finding); Dep't of Homeland Sec. v. Thuraissigiam, 591 U.S. 103, 111 (2020) ("Whether an applicant who raises an asylum claim

---

[2] Should circumstances change—for example, if the BIA vacates the IJ's removal order, if the appeal languishes without resolution, or if for any other reason Martins-Januario's detention becomes unreasonably prolonged—nothing in this decision forecloses the filing of a new habeas petition challenging the reasonableness of his continued detention without a bond hearing.

[3] The dates within these parentheticals were all during 2025.

[during the expedited-removal process] receives full or only expedited review, the applicant is not entitled to immediate release."). Nor does the respondents' exercise of discretion in granting Martins-Januario temporary humanitarian parole pursuant to § 1182(d)(5)(A), which expressly provides for a parolee's return "forthwith . . . to the custody from which he was paroled" upon a decision by the respondents to terminate such parole. Decisions to detain Martins-Januario after a series of ATD violations arising within the limited parole period, and to subsequently revoke his parole, are beyond the scope of this Court's review. See 8 U.S.C. § 1252(a)(2)(B)(ii) (identifying such discretionary decisions as "matters not subject to judicial review"). And, considered in the context of the record as a whole, the respondents' issuance of an arrest warrant referencing § 1226 does not, in this case, overcome the otherwise uniform course of conduct by the respondents. From his arrival until his detention less than a year later, the respondents treated Martins-Januario as a noncitizen subject to the procedures set forth in § 1225.[4]

Accordingly, Martins-Januario's petition (Doc. No. 1) is DENIED.

SO ORDERED.

    /s/ Leo T. Sorokin
United States District Judge

---

[4] This course of conduct distinguishes this case from many others the Court has considered in recent months. Martins-Januario was not issued conflicting documents (including some invoking § 1226) during his initial encounter with CBP. His original parole period was not permitted to lapse, nor was it extended for years without any action by the respondents or the immigration courts in pursuit of his removal. And, he did not fully comply with the terms of his release.